IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00866-CMA-NYW

SCOTT D. SMITH and JENNIFER K. SMITH,

    Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Magistrate Judge Nina Y. Wang

This matter comes before the court on Defendant's Motion to Strike Portions of Plaintiffs' Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(f) (the "Motion" or "Motion to Strike") [Doc. 30, filed May 7, 2021]. This court considers the Motion pursuant to 28 U.S.C. § 636(b); the Order of Reference dated May 10, 2021 [Doc. 31]; and the Memorandum dated May 10, 2021 [Doc. 31]. After carefully considering the Parties' briefing and the applicable case law, I respectfully **RECOMMEND** that the Motion to Strike be **GRANTED IN PART and DENIED IN PART**.

### BACKGROUND

The following facts are drawn from Plaintiff's Amended Complaint [Doc. 26] and are presumed true for the purposes of this instant Motion. Defendant State Farm Fire and Casualty Company ("Defendant" or "State Farm") insured the residential property located at 8251 Arrowhead Way, Lone Tree, CO 80124 owned by Plaintiffs Scott D. Smith ("Mr. Smith") and Jennifer K. Smith ("Ms. Smith") (collectively, "Plaintiffs" or "the Smiths"). [Doc 26 at ¶ 5]. Plaintiffs' insurance policy ("the Policy"), effective as of May 20, 2018,

provided for the risk of loss or damage to Plaintiffs' residence in the event of "accidental direct physical loss to the property." [*Id*. at 7–8].

On or about May 20, 2018, the Smiths discovered a water leak emanating from the hot water supply line for their kitchen sink ("May 2018 Leak"). [*Id*. at ¶ 9]. Plaintiffs turned off the water to their house and hired a plumber to repair the leak shortly thereafter. [*Id*. at ¶ 10]. The plumber remarked that the "leaks appear recent" and that "[b]ased on [the] amount of water from [the] leak and location where the leak was discovered it does not appear to have been leaking for long." [*Id*. at ¶ 11].

The Smiths then submitted a claim to State Farm for the damage resulting from the May 2018 Leak. [*Id*. at ¶ 12-13]. After the claim was initiated, Ms. Smith and a representative from a content moving and storage company, C&C Restoration, contacted Defendant to inquire about whether it would extend coverage and pay the claim. [*Id*. at ¶ 14]. Plaintiffs allege that Defendant confirmed that it would pay the claim. [*Id*. at ¶ 15]. Relying on Defendant's assurances, Plaintiffs authorized C&C Restoration to remove their personal property from the damaged area of their home and to store it at an offsite location. [*Id*. at ¶ 16]. Plaintiffs additionally authorized Restoration 1, a water damage remediation company, to proceed with remediating the water damage to Plaintiffs' home. [*Id*.].

On or about May 29, 2018, Defendant's representative met with Mr. Smith at the Smith's home to examine the May 2018 Leak damage. [*Id*. at ¶ 18]. During this meeting, Mr. Smith advised Defendant that a portion of the damaged area that had been affected by the May 2018 Leak had also been affected by a separate water leak in 2017 ("2017 Leak"). [*Id*. at ¶ 19]. Defendant's representative then examined damage from the 2017

2

Leak, and informed Plaintiffs that State Farm likely would not cover damage caused by that prior leak. [*Id*. at ¶ 20]. However, Defendant's representative assured Plaintiffs that State Farm would look for ways to cover the damage caused by the May 2018 Leak, and would also provide a breakdown of the specific items that would be covered. [*Id*.].

The Smiths allege that, following the May 29 meeting, Defendant refused to respond to multiple communications from Plaintiffs and their service providers who were hired to assist with fixing the water leak damage. [*Id*. at ¶ 21]. Plaintiffs assert that they wrote to State Farm three times between June 27, 2018 and July 10, 2018 requesting more information. [*Id*. at ¶ 23]. Plaintiffs also contend that they asked State Farm, on multiple occasions, to provide them with a copy of their policy and State Farm ignored these requests. [*Id*. at ¶ 25].

Then, on July 2, 2018, the Smiths learned that State Farm was considering denying their claim, and asked Defendant to confirm whether this was true, and, if so, to explain why. [*Id*. at ¶ 26]. Plaintiffs allege that Defendant never responded to this request. [*Id*. at ¶ 27]. Mr. Smith was able to reach a State Farm representative to discuss the claim on July 13, 2018. [*Id*. at ¶ 28]. During that call, State Farm informed Plaintiffs that it would be denying their claim. [*Id*. at ¶ 29]. Plaintiffs assert that Defendant falsely stated that Plaintiffs' claim was denied because the leak under Plaintiffs' kitchen sink had been long-standing, but Defendant provided no facts to support the basis for its denial.[1] [*Id*. at ¶¶ 33–34].

---

[1] Plaintiffs allege that Defendant's assertion was false because, on May 17, 2018, three days before the leak, Mr. Smith had been in the basement and on that date, there was no water on the basement floor, no water damage was visible on the wall, and no water damage was visible on any of the personal property in the area. [*Id*. at ¶¶ 35–36]. Additionally, on May 2, 2018, Plaintiffs had taken a video of the affected area of the

Plaintiffs requested that Defendant reconsider its denial on August 24, 2018 ("August 24 Letter"). [*Id*. at ¶ 39]. In that letter, Plaintiffs asked Defendant to explain: (a) whether State Farm considered three days to constitute "repeated leakage or seepage of water"; (b) and if not, what time frame does State Farm consider to be "repeated leakage or seepage of water"; and (c) how State Farm is defining this term in the Policy. [*Id*.]. Plaintiffs contend that Defendant never answered these questions. [*Id*. at ¶ 40]. The August 24 Letter also asked Defendant to explain: (a) whether State Farm believed that it would have taken more than three days for water to travel the distance it had traveled; (b) the distance State Farm believed water would have travelled from the leak within the three-day period it was observed to have occurred; (c) whether State Farm believed the area affected by water was covered in water for more than three days; (d) why the water failed to travel further if it lasted more than three days; (e) if the leak was long-standing, why there was no evidence of rot on the wooden subfloor affected by the leak; and (f) if the leak was long-standing, why there no evidence of mold on the wooden subfloor affected by the leak. [*Id*. at ¶ 41]. The August 24 Letter also asked State Farm to explain: (a) the portion of observed damage State Farm had determined was due to repeated seepage and leakage of water; (b) any portion of the damage State Farm had determined was not due to repeated seepage and leakage of water; and (c) State Farm's basis for asserting that all of the observed damage was due to repeated seepage or leakage when there was no observable evidence of water three days before the loss. [*Id*. at ¶ 43]. Defendant did not respond to these inquiries. [*Id*. at ¶¶ 42, 44]. Plaintiffs allege that they, once again, asked Defendant for a copy of their policy and Defendant did not comply. [*Id*.

---

home's basement. [*Id*. at ¶ 37]. Plaintiffs again claim that there was no visible water damage in that area of the basement. [*Id*. at ¶ 38].

at ¶¶ 45–46]. Following Defendant's receipt of the August 24 Letter, Defendant's representative contacted Plaintiffs and indicated that Plaintiffs could provide evidence of the area affected by the 2017 Leak showing that it was not damaged, and State Farm would reevaluate their claim. [*Id*. at ¶ 47].

On May 20, 2020, Plaintiffs notified Defendant that they would be forwarding a video of the water-damaged area of their home that was taken two and a half weeks prior to the date of the loss. [*Id*. at ¶ 48]. The Smiths contend that the video demonstrated that on May 2, 2018, water was not present on the carpet that was ultimately damaged by the May 2018 water leak two and a half weeks later. [*Id.* at ¶ 49]. Additionally, water was not present on the walls or personal property that were subsequently affected by the May 2018 leak. [*Id*.].

On July 1, 2020, Plaintiffs wrote to Defendant asking about the status of their claim. [*Id*. at ¶ 50]. That same day, the Smiths initiated this action in the District Court for Boulder County, Colorado. [Doc. 6]. On July 17, 2020, Plaintiffs were contacted by defense counsel who indicated that they would be representing the Defendant. [*Id*. at ¶¶ 51–52]. Plaintiffs contend that they still did not receive Defendant's response concerning their other communications, and concluded that Defendant had yet to evaluate the video. [*Id*. at ¶ 53]. On October 9, 2020, Plaintiffs received a letter from State Farm indicating that it had viewed the video and that it would still be denying the claim. [*Id*. at ¶ 54]. Plaintiffs contend that Defendant's denial of their claim lacked a reasonable basis. [*Id*. at ¶ 58].

The case was then removed to the United States District Court for the District of Colorado on March 24, 2021, and the Smiths filed the operative Amended Complaint on April 16, 2021. [Doc. 1; Doc. 26]. In the Amended Complaint, Plaintiffs asserts claims

against Defendant for breach of contract, common law bad faith, and statutory bad faith. *See* [*id.* at ¶¶ 68–86]. Plaintiffs seek relief including monetary damages, pre- and post-judgment interest, and attorneys' fees. [*Id.* at ¶¶ 13–14]. Relevant here, Paragraph 4 of the Amended Complaint states that, "[i]n matters involving insurance, particularly claims, there are what are called **Industry Standards**, which are minimum levels of conduct," and then sets forth 23 such standards of conduct. *See* [Doc. 26 at ¶¶ 4(a)–4(w) (emphasis added)]. In the Motion to Strike, Defendant seeks to strike the allegations in Paragraph 4 because they "bear no importance or relevance to the claims asserted by Plaintiffs" and "are prejudicial to [Defendant] as they operate to confuse the issues for the jury [and] improperly expand discovery." [Doc. 30 at 3]. The court turns to the Parties' respective arguments below.

## LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure permits a district court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of Rule 12(f) is to save the time and money that would be spent litigating issues that will not affect the outcome of the case." *U.S. v. Smuggler-Durant Mining Corp.*, 823 F. Supp. 873, 875 (D. Colo. 1993). However, motions to strike under Rule 12(f) are disfavored. *U.S. v. Shell Oil Co.*, 605 F. Supp. 1064, 1085 (D. Colo. 1985) (citing 5 Wright & Miller, Federal Practice and Procedure § 1380, at 783 (1969)); *see also Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc.*, 173 F.R.D. 275, 285 (D. Colo. 1997) (describing Rule 12(f) motions as a "generally-disfavored, drastic remedy"). Motions to strike are usually only granted when the allegations in the complaint have no bearing on the controversy and the movant can show that it has been prejudiced.

6

*Sierra Club v. Young Life Campaign, Inc.*, 176 F. Supp. 2d 1070, 1086 (D. Colo. 2001). Indeed, "[e]ven where the challenged allegations fall within the categories set forth in the rule, a party must usually make a showing of prejudice before the court will grant a motion to strike." *Id.* at 1085.

## ANALYSIS

Defendant argues that the allegations in Paragraph 4 "are entirely unnecessary for Plaintiffs to state facts regarding the actual loss and actual insurance claim at issue here." [Doc. 30 at 7]. Additionally, Defendant states that "Paragraph [4] is a laundry list of claim handling practices that Plaintiffs' counsel argues constitute 'industry standards[,] and [c]ounsel's opinions on legal standards have no place in the pleadings of this suit." [*Id.*]. Relatedly, Defendant argues that the remaining factual allegations in the Amended Complaint "fail[] to demonstrate how those facts relate [to] each and every 'industry standard' within [P]aragraph [4]." [*Id.*]. Finally, Defendant argues that it will be prejudiced by the allegations in Paragraph 4 of the Amended Complaint because the allegations "operate only to confuse the issues in the case and inflame public opinion" and "also operate to impermissibly expand discovery by requiring Defendant to respond to what are effectively dozens of requests for admission before discovery has even commenced." [*Id.* at 8].

In response, Plaintiffs set forth three arguments. First, Plaintiffs argue that the statutory and common law bad faith claims are evaluated "based on industry standards," [Doc. 37 at 7]. Second, Plaintiffs argue that the insurance industry standards in Paragraph 4 of the Amended Complaint are "pertinent and material to Plaintiffs' claims," and then explain how the remaining allegations in the Amended Complaint relate to each

industry standard. [*Id*. at 8–12]. Third, Plaintiffs assert that their pleading of the industry standards is consistent with the pleading standards under Federal Rule of Civil Procedure 8 because the Amended Complaint "provides Defendant with notice of the conduct at issue in the handling of Plaintiff's claim, and the industry standards Plaintiffs assert Defendant to have violated." [*Id*. at 12–14].

In its Reply, Defendant reiterates its primary arguments from the Motion to Strike and further counters that Plaintiffs are using their pleadings and their briefing to the instant Motion "to poison the well by filing case documents with incendiary, unsupported accusations about Defendant." [Doc. 38 at 1]. Specifically, Defendant finds issue with Plaintiff's allegations that are set forth "upon information and belief" related to Plaintiffs' allegation that Defendant "incentivized its employees to reduce claim payments on Plaintiffs' claim," [*id*. at 2–3], and allegations related to Defendant's documentation of Plaintiff's claims and findings of other courts regarding Defendant's denial of claims, [*id*. at 3–4]. For the following reasons, I respectfully disagree with Defendant.

I.   Paragraph 4

***Relevance.***   Defendant first argues that Paragraph 4 of the Amended Complaint should be stricken because it contains argument and immaterial allegations. [Doc. 30 at 5]. But Plaintiffs' Second Claim for Relief alleges bad faith breach of insurance contract. [Doc. 26 at 11]. In a first-party common law bad faith claim, a plaintiff must establish that the insurer acted unreasonably under the circumstances and "either knowingly or recklessly disregarded the validity of the insured's claim." *Goodson v. Am. Standard Ins. Co. of Wis.*, 89 P.3d 409, 415 (Colo. 2004) (citation omitted). "The reasonableness of an insurer's conduct is measured objectively based on industry standards in both the first-

party and third-party context." *Am. Fam. Mut. Ins. Co. v. Allen*, 102 P.3d 333, 343 (Colo. 2004); *see also O'Sullivan v. Geico Cas. Co.*, 233 F. Supp. 3d 917, 928 (D. Colo. 2017) ("Here, the central issue in dispute is the reasonableness of [the insurer's] conduct. The reasonableness of an insurer's conduct is "determined objectively, based on proof of industry standards.").

Thus, allegations of applicable industry standards listed in Paragraph 4 of the Amended Complaint appear to be relevant to Plaintiffs' claims. Plaintiffs assert that the inclusion of the industry standards are necessary for their statutory and common law bad faith claims, *see* [Doc. 37 at 4], and the court respectfully agrees. Defendant's assertion in its Reply brief "that the industry standards cited by Plaintiff have not been established as being relevant … because the Amended Complaints [sic] does not state legitimate facts regarding State Farm's handling of the Plaintiffs' claims to those industry standards," [Doc. 38 at 6], does not persuade this court otherwise. Indeed, the issue of whether, ultimately, certain industry standards are – or are not – applicable to the facts of this case and who can testify to them is properly reserved for the presiding judge to determine at a later stage in this action, not in the context of a Motion to Strike. *Cf. Hansen Constr. Inc. v. Everest Nat'l Ins. Co.,* No. 16-CV-02902-CMA-GPG, 2019 WL 2602510, at *4 (D. Colo. June 25, 2019). But as discussed in more detail below, some of the allegations contained in Paragraph 4 are not factual assertions regarding applicable industry standards, but are characterizations of applicable law.

Defendant is specifically concerned with subparagraphs u, v, and w. *See* [Doc. 38 at 6]. Paragraph 4(u) alleges that "[i]nsurers should not in any manner tie any claim personnel's compensation with insurer profitability based on delay or denial of claims."

9

[Doc. 26 at ¶ 4(u)].  Paragraph 4(v) alleges that "[i]nsurers should not use their claims department as a profit center."  [*Id.* at ¶ 4(v)].  Paragraph 4(w) avers that "[i]nsurers may not violate the Unfair Claims Settlement Practices Act."  [*Id.* at ¶ 4(w)].  This court agrees that these statements are not factual allegations regarding standards generally accepted in the insurance industry as to how a first-party insurance claim should be adjusted.  Rather, they are more akin to public policy statements that are not relevant to whether State Farm was reasonable in its conduct when adjusting the Smiths' claim.  In addition, Paragraph 4(w) is a type of statement regarding applicable law that generally is reserved to the trial court.  *See Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988) ("[O]ur system reserves to the trial judge the role of adjudicating the law for the benefit of the jury.").  Similarly, Paragraphs 4(a); 4(b); 4(c); and 4(d) assert statements regarding how particular law should be interpreted.  *See* [Doc. 26 at ¶¶ 4(a); 4(b); 4(c); 4(d)].  Again, this court concludes that these are not proper allegations for the Amended Complaint for the same reason.

Having found that some of the subparts of Paragraph 4 are immaterial, this court turns to consider whether State Farm has made "a showing of prejudice" to justify striking the averments.  *See Sierra Club*, 176 F. Supp. 2d at 1085.  This court is not persuaded by Defendant's assertion that the allegations in Paragraph 4 of the Amended Complaint should be stricken on the grounds that they are "unnecessary" and designed to expand the scope of discovery; indeed, Defendant has failed to demonstrate that discovery that Plaintiffs might seek about applicable industry standards is unreasonably cumulative or duplicative.  Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

10

proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The actual scope of discovery should be determined according to the reasonable needs of the action." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1189 (10th Cir. 2009). As discussed above, the reasonableness of an insurer's conduct is determined objectively, based on proof of industry standards. *See O'Sullivan*, 233 F. Supp. 3d at 928.

Nevertheless, this court does find that permitting Paragraphs 4(a); 4(b); 4(c); 4(d); 4(u); 4(v); and 4(w) in Plaintiffs' Amended Complaint to remain may unfairly prejudice Defendant. Both Parties cite this court's Recommendation in *Masters v. Allstate Prop. & Cas. Ins. Co.*, No. 20-cv-01213-DDD-NYW, 2020 WL 9424371, at *3 (D. Colo. Jul. 7, 2020) as supporting their respective positions. [Doc. 30 at 2, n.1; Doc. 37 at 13]. While the allegations in the Complaint in *Masters* were different than the allegations in the Amended Complaint here, the same principle applies: argumentative allegations that are immaterial, impertinent, or scandalous which only serve to confuse and inflame public opinion may be stricken under Rule 12(f). *See, e.g., Foster v. Pfizer* Inc., No. 00-1287-JTM, 2000 WL 33170897, at *3 (D. Kan. Dec. 12, 2000). To the extent that any Party might seek to use these allegations (or the responses thereto) to establish or rebut the reasonableness of State Farm's conduct, such use would run afoul of the court's role in advising the jury on the applicable law and the jury's role in determining whether State Farm acted objectively reasonably. On this basis, this court finds it appropriate to recommend the striking of Paragraphs 4(a); 4(b); 4(c); 4(d); 4(u); 4(v); and 4(w) in Plaintiffs' Amended Complaint.

This court does not conclude the same as to the remaining allegations in Paragraph 4. To the extent that State Farm disagrees that such allegations are correct

statements of industry standards, it is free to deny them.

## II. Other Allegations

Defendant also asks the court to strike "all other argumentative allegations in the Complaint that fail to state the elements of a claim or a fact supporting those elements," but fails to identify, or set forth arguments regarding, such "other argumentative allegations" that it claims are at issue in its affirmative Motion. *See* [Doc. 30 at 3]. To the extent that State Farm identifies statements made "upon information and belief," in their Reply, this court declines to pass on arguments raised for the first time on Reply. *See Cahill v. American Family Mut. Ins. Co.*, 610 F.3d 1235, 1239 (10th Cir. 2010) (*citing Hill v. Kemp*, 478 F.3d 1236, 1250–51 (10th Cir. 2007) (arguments first raised in a reply brief come too late)); *Ulibarri v. City & County of Denver*, 742 F. Supp. 2d 1192, 1218 (D. Colo. 2010) (argument first raised in reply brief may be disregarded). There is no explanation as to why State Farm could not have raised these arguments in its affirmative Motion, and "[t]o consider evidence or arguments first raised in a reply brief would be manifestly unfair to plaintiff who, under our rules, has no opportunity for a written response and it would also be unfair to the court itself, which, without the benefit of a response to a late-blooming argument, would run the risk of an improvident or ill-advised opinion, given our dependence as a[] [] court on the adversarial process for sharpening the issues for decision." *Pinnacle Packaging Co., Inc. v. One Equity Partners (Eur.) GmbH*, No. 12-CV-537-JED-TLW, 2016 WL 6638621, at *1 (N.D. Okla. May 4, 2016) (internal quotation marks omitted) (citing *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1278 (10th Cir. 1994) (quoting *Herbert v. National Academy of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)).

Even if this court were to consider Defendant's substantive arguments, Defendant cites, and this court independently found, no authority for the premise that at the pleading stage (as opposed to in an affidavit or at summary judgment), a plaintiff cannot plead a fact based "upon information and belief." To the contrary, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a short plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and grounds upon which it rests." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2nd Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). Notably, "[t]he *Twombly* plausibility standard, which applies to all civil actions … does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of defendant … or where the belief is based on factual information that makes the inference of culpability plausible." *Id.* The pleading stage "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## CONCLUSION

For the foregoing reasons, this court respectfully **RECOMMENDS** that:

(1) Defendant's Motion to Strike Portions of Plaintiffs' Amended Complaint [Doc. 30] be **GRANTED IN PART and DENIED IN PART;** and

(2) Paragraphs 4(a); 4(b); 4(c); 4(d); 4(u); 4(v); and 4(w) in Plaintiffs' Amended Complaint be **STRICKEN**.[2]

---

[2] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's

DATED: November 9, 2021  BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge

---

objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. See *Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).